Kathyleen A. O'Brien (SBN 94218)
Email:   kobrien@reedsmith.com
Dominique H. Pietz (SBN 260716)
Email:   dpietz@reedsmith.com
Reed Smith LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA  90067-6078
Telephone: +1 310 734 5200
Facsimile:  +1 310 734 5299

Mark S. Melodia (pro hac vice)
Email: mmelodia@reedsmith.com
Paul Bond (pro hac vice)
Email: pbond@reedsmith.com
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ  08540

Attorneys for Defendants
BLIZZARD ENTERTAINMENT, INC.
AND ACTIVISION BLIZZARD, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN BELL, an individual, and CHRISTOPHER SPELLMAN, an individual,<br><br>    Plaintiffs,<br><br>  vs.<br><br>BLIZZARD ENTERTAINMENT, INC., a Delaware corp., and ACTIVISION BLIZZARD, INC., a Delaware corp.,<br><br>    Defendants. | Case No. 2:12-cv-09475-SVW (PJWx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF PURSUANT TO FEDERAL RULE 12(b)(1)**<br><br>Date:  February 18, 2013<br>Time:  1:30 p.m.<br>Place:  Courtroom 6<br>     312 North Spring Street<br>     Los Angeles, CA  90012<br><br>Compl. Filed:   November 5, 2012<br><br>Honorable Stephen V. Wilson |

**PLEASE TAKE NOTICE** that on February 18, 2013, at 1:30 p.m. in the above entitled Court, Defendants Blizzard Entertainment, Inc. and Activision Blizzard, Inc. will, and hereby do, move this Court to dismiss all of Plaintiffs' claims for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1).

This Motion is supported by the following Memorandum of Points and Authorities and the complete files and records of this action and upon any such oral and documentary evidence as may be allowed at the time of hearing. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 8, 2013 and January 9, 2013.

DATED: January 18, 2013       REED SMITH LLP

By: /s/ Kathyleen A. O'Brien
   Kathyleen A. O'Brien (SBN 94218)
   Dominique H. Pietz (SBN 260716)
   Mark S. Melodia (pro hac vice)
   Paul Bond (pro hac vice)
   Attorneys for Defendants
   BLIZZARD ENTERTAINMENT, INC. and
   ACTIVISION BLIZZARD, INC

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ........................................................................ 1

II. RELIEF REQUESTED .................................................................................. 2

III. STATEMENT OF RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY ............................................................................ 2

IV. PLAINTIFFS' DEMANDS FOR INJUNCTIVE RELIEF MUST BE DISMISSED .................................................................................................... 5

    A. This Court Should Dismiss Demands For Injunctive Relief Even While Compelling Arbitration. ............................................... 5

    B. A Motion To Dismiss Under Rule 12(b)(1) Is An Appropriate Procedural Mechanism For Disposing Of Plaintiffs' Prayer For Injunctive Relief. ............................................................................. 5

    C. Plaintiffs Must Establish Standing To Seek Injunctive Relief Under Well-Settled United States Supreme Court Precedent, Ninth Circuit Precedent, and the Decisions of This Court. .......................................................................................... 6

    D. Plaintiffs' Demands For Injunctive Relief Do Not Present An Actual or Imminent Threat That Plaintiffs Will Suffer Concrete And Particularized Harms, And So Must Be Dismissed. ......................................................................................... 9

    E. This Court Can Dismiss Plaintiffs' Claims for Injunctive Relief Independent of Any Ruling By The Arbitrator. ............. 11

V. CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

Baldwin v. Sebelius,
    654 F.3d 877 (9th Cir. 2011) .................................................................. 7, 8, 11

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ................................................................................. 7, 8, 10

Doe v. Match.com,
    789 F. Supp. 2d 1197 (C.D. 2011) .................................................................. passim

Gest v. Bradbury,
    443 F.3d 1177 (9th Cir. 2006) ................................................................. 7, 10

Gros Ventre Tribe v. U.S.,
    469 F.3d 801 (9th Cir. 2006) .................................................................... 11

In re Intel Laptop Battery Litigation,
    2011 WL 7290487 (N.D. Cal. 2011) .......................................................... 6, 7, 10

Krottner v. Starbucks Corp.,
    628 F.3d 1139 (9th Cir. 2010) ................................................................. 8, 9, 10

LaCourt v. Specific Media, Inc.,
    2011 WL 1661532 (C.D. Cal. 2011) ............................................................... 8, 11

Low v. LinkedIn Corp.,
    2011 WL 5509848 (N.D. Cal. 2011) ............................................................... 8, 11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .................................................................................... 8, 11

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 and n. 23 (1983) ......................................................................... 11

Okura & Co. (America), Inc. v. Careau Group,
    783 F. Supp. 482 (C.D. Cal. 1991) ................................................................. 5

Reilly v. Ceridian Corp.,
    664 F.3d 38(3d Cir. 2011) cert. denied, 132 S.Ct. 2395 (2012) ........................... 8

Robinson v. U.S.,
    586 F.3d 683 (9th Cir. 2007) ........................................................................... 6

Spragin v. McDonald's USA, LLC,
    C.D. Cal., CV-10-09617-SVW ...................................................................... 2

Summers v. Earth Island Institute,
    555 U.S. 488 (2009) ................................................................................... 6, 7, 10

Thornhill Publishing Co. v. General Telephone Electronics,
    594 F.2d 730 (9th Cir. 1979) ........................................................................... 6

United Communications Hub, Inc. v. Qwest Communications, Inc.,
    46 Fed.Appx. 412 (9th Cir. 2002) .................................................................. 11

Warth v. Seldin,
    422 U.S. 490 (1975) ..................................................................................... 6

Whitaker v. Health Net of California, Inc.,
    2012 WL 174961 (E.D. Cal. 2012) ................................................................ 8, 11

Whittlestone, Inc. v. Handi-Craft Company,
    618 F.3d 970 (9th Cir. 2010) ........................................................................... 6

## I. SUMMARY OF ARGUMENT

Defendant Blizzard Entertainment, Inc. provides an online game experience. Defendant Activision Blizzard, Inc. is the American holding company for multiple game-publishing entities, including Blizzard Entertainment, Inc.  Because Plaintiffs have sued these companies as a unit, this Motion to Compel will refer to the Defendants collectively as "Blizzard," without prejudice to any right or defense that either may have individually.

Plaintiffs Benjamin Bell and Christopher Spellman ("Plaintiffs") chose to take advantage of Blizzard's services.[1]  As consideration for using these services, each Plaintiff agreed to Terms of Use and an incorporated Dispute Resolution Policy.  Class Action Complaint at ¶¶ 9-10 and Notice of Errata at 49-56, *Benjamin Bell v. Blizzard Entertainment Inc. et al.*, 2:12-cv-09475-SVW-PJW Document 4-1 (C.D.C.A. Nov. 13, 2012) (hereafter, "Compl.").  The Dispute Resolution Policy requires each Plaintiff to submit almost any dispute he might have with Blizzard to binding individual (non-class) arbitration.  Therefore, Blizzard has filed a separate Motion to Stay Action and Compel Arbitration Pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq. (hereafter, "Motion to Compel").

As explained in that Motion to Compel, the arbitrator will have authority to decide liability on every cause of action presented by each Plaintiff and their corresponding demands for compensation.  Given that neither Plaintiff even alleges that he suffered any loss of money, goods, or services in connection with the criminal attack on Blizzard's computer systems by a third party, it seems doubtful that either will prevail in arbitration against Blizzard.  That is for the arbitrator to decide.  However, pursuant to the Terms of Use and Dispute Resolution Policy agreed to between the parties, which contain a carve out for Plaintiffs' demands for injunctive relief, the

---

[1] For purposes of this Motion, all factual allegations set forth in the Complaint are assumed to be true.  Should this matter proceed further, Blizzard would vigorously challenge the factual allegations in the Complaint as well as all legal conclusions that Plaintiffs would seek to draw therefrom.

arbitrator will not have any authority to award any injunctive relief. The legal sufficiency of any claims for injunctive relief, then, is for this Court to decide.

Without actual or imminent injury, Plaintiffs have no standing to seek injunctive relief in federal court. Therefore, Blizzard moves now under Federal Rule of Civil Procedure 12(b)(1) for the dismissal of all such claims for injunctive relief. As set forth below, the prior decisions of the United States Supreme Court and the Ninth Circuit Court of Appeals require that this Motion to Dismiss be granted. Blizzard asks that this Court apply that precedent as it has in the past, and reject Plaintiffs' claims for injunctive relief which Plaintiffs have no standing to seek. See, e.g., Doe v. Match.com, 789 F. Supp. 2d 1197, 1199 (C.D. 2011)(Wilson, J.)(hereafter, Match.com)(holding that plaintiff lacked Article III standing to bring claims for injunctive relief, remanding case for lack of subject-matter jurisdiction), Spragin v. McDonald's USA, LLC, C.D. Cal., CV-10-09617-SVW (JEMx)(Wilson, J.)(finding plaintiff lacked Article III standing to bring claims for injunctive relief, striking such claims as immaterial under Rule 12(f)).

## II. RELIEF REQUESTED

In this Motion to Dismiss, Blizzard asks this Court to dismiss Plaintiffs' demands for injunctive relief, including those in paragraphs 1, 8, 65n, 75, 89, and the Prayer for Relief, subpart E. Plaintiffs should not be allowed to maintain these injunctive claims, wasting the judicial resources of this District Court, when the claims are insufficient on their face.

If this Motion to Dismiss is denied, Blizzard asks this Court to stay any ruling on injunctive relief until liability has been determined in arbitration. See Motion to Compel, p. 2, n. 2.

## III. STATEMENT OF RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Blizzard offers a number of game experiences online. These franchises include the video game titles Diablo, StarCraft, and World of Warcraft. Compl. ¶ 10.

According to the Complaint, "Beyond the development and publishing of its video game titles, Blizzard owns and administers Battle.net, a website that manages online accounts for Blizzard customers. Defendants require customers to activate Battle.net accounts in order to play any of the games manufactured and sold by Defendants." Compl. ¶ 18. Each Plaintiff alleges that he has purchased one or more Blizzard game, and has subscribed to the Battle.net website. Compl. ¶¶ 9-10.

Before a subscriber logs in to Battle.net, Blizzard will ask for a username and password. Blizzard may also ask some additional "challenge questions" to make sure the person claiming to be a subscriber really is one. Compl. ¶ 36. Battle.net subscribers have the option to purchase an auxiliary security device called an Authenticator, to provide additional protection. Compl. ¶ 25. An Authenticator will create a random number each time the subscriber tries to access Battle.net. Compl. ¶ 26. Blizzard will ask for this additional number when the subscriber tries to access his account. If the person seeking access does not enter the right number, access will be denied. This is just another way to keep any hacker from using a misappropriated username and password to pretend to be the subscriber.[2]

Blizzard does not require every player to buy an Authenticator – it only requires those players who choose to engage in certain additional online experiences to do so. Compl. ¶ 25. Plaintiff Spellman claims he has bought an Authenticator in connection with his Battle.net account, while Plaintiff Bell says he did not. Compl. ¶¶ 9-10.

Plaintiffs additionally allege that a hacker broke into Blizzard's online systems and gained access to information from Blizzard's computers. The information allegedly included e-mail addresses, answers to personal security questions, and

---

[2] Importantly, the Authenticator is not designed to keep Blizzard or Blizzard's computers safe from criminal attack. The Authenticator plays no role in protecting Blizzard from would-be hackers. The Authenticator is available for sale to be used by subscribers, as a protection against a third party misappropriating log-in information (username, password) from the subscriber's computer or device. There is no allegation in the Complaint that criminals have attacked Plaintiffs' computers or devices, much less misappropriated any Blizzard usernames or passwords from those computers or devices.

encrypted passwords.  Compl. ¶ 36.  Plaintiffs do not allege:

- That the hacker acquired any sensitive personal information about Plaintiffs, like a Social Security Number or credit card number;
- That Plaintiffs have since been the victims of actual or attempted identity theft;
- That Plaintiffs are a cent out of pocket because of this alleged intrusion;
- That Plaintiffs had to buy new equipment or abandon already purchased equipment;
- That the hacker has unencrypted Plaintiffs' passwords, allowing the hacker to read those passwords;
- That the information allegedly hacked was sufficient to identify either Plaintiff personally; nor
- That the information allegedly hacked has been, or will be, put to any use whatsoever by the hacker.

In other words, Plaintiffs do not allege they suffered any actual harm.  Plaintiffs instead voice general dissatisfaction with how Battle.net is operated.  For example, Plaintiffs complain that the Battle.net accounts are only necessary for players who engage in a "Massively Multiplayer Online Role Playing Game" or "MMORPG," like World of Warcraft, Compl. ¶ 19, and therefore consumers like Bell, who allegedly only subscribed to non-MMORPGs, like Diablo and Starcraft, Compl. ¶ 9, should never have been required to set up a Battle.net account in the first place.

Plaintiffs also complain that Blizzard does not offer the Authenticator for sale early enough in the purchase process.  "Defendants . . . .have informed their customers, after the point of sale, that they must purchase additional security products in order to ensure the sanctity of their Private Information."  Compl. ¶ 6.

Lastly, Plaintiffs assert that Blizzard has failed to take adequate security precautions, Compl. ¶¶ 54-55, but do not say what "adequate security precautions" are or how they would have immunized Blizzard from criminal attack.

Plaintiffs demand not only "compensatory damages," but also "injunctive relief."  Compl. ¶¶ 1, 8, 65n, 75, and 89.  Plaintiffs' demand for injunctive relief, specified in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

their Prayer for Relief, Section E, is for an order:

> (a) enjoining Defendants from tacking on additional, undisclosed costs to ensure security in the form of a post-point-of-sale Authenticator; (b) enjoining Defendants from requiring customers to acquire a Battle.net account (and thereby risking the security of their Private Information) for game titles that are not MMORPGs, such as the StarCraft or Diablo franchises; and (c) enjoining Defendants from actions which place consumers at a risk of future security breaches.

## IV. PLAINTIFFS' DEMANDS FOR INJUNCTIVE RELIEF MUST BE DISMISSED

### A. THIS COURT SHOULD DISMISS DEMANDS FOR INJUNCTIVE RELIEF EVEN WHILE COMPELLING ARBITRATION.

Injunctive relief is a remedy, not a cause of action. See, e.g., Okura & Co. (America), Inc. v. Careau Group, 783 F. Supp. 482, 490 (C.D. Cal. 1991) (Wilson, J.). Because a remedy only arises from a cause of action, Plaintiffs cannot maintain a separate procedure before this Court to seek "injunctive relief" while their causes of action are before the arbitrator exclusively. Thus, the Court cannot properly determine whether this remedy is appropriate in advance of a determination of liability on the claims in arbitration.

While this Court may not entertain Plaintiffs' demands for injunctive relief prior to arbitration, this Court may dismiss those demands on their face. Regardless of what result could come from arbitration, (1) Plaintiffs have not sufficiently alleged that they are under threat of suffering "injury in fact" that is concrete and particularized; (2) there is no actual or imminent threat and any threat raised by Plaintiff is conjectural and/or hypothetical at best; (3) any harm alleged is not traceable to the challenged action of the Defendants; and (4) it is unlikely that a favorable judicial decision will prevent or redress the claimed injury, as required by the applicable legal standard.

### B. A MOTION TO DISMISS UNDER RULE 12(B)(1) IS AN APPROPRIATE PROCEDURAL MECHANISM FOR DISPOSING OF PLAINTIFFS' PRAYER FOR INJUNCTIVE RELIEF.

Where a defendant presents a facial challenge to a plaintiff's right to a certain

type of relief, that challenge must be presented under Rule 12(b). <u>Whittlestone, Inc. v. Handi-Craft Company</u>, 618 F.3d 970, 974 (9th Cir. 2010). More specifically, Rule 12(b)(1) allows for a defendant to oppose any "claim for relief" on the basis that a Court lacks subject-matter jurisdiction. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." <u>Robinson v. U.S.</u>, 586 F.3d 683, 687 (9th Cir. 2007)(quotation marks and citation omitted).

"On a facial challenge, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself." <u>In re Intel Laptop Battery Litigation</u>, 2011 WL 7290487 at *2 (N.D. Cal. 2011)(Ware, C.J.)(dismissing claims for injunctive relief based on past transactions, citing lack of standing), citing to <u>Thornhill Publishing Co. v. General Telephone Electronics</u>, 594 F.2d 730, 733 (9th Cir. 1979).

In this case, even if all well-pleaded factual allegations in the Complaint were proven in arbitration, Plaintiffs would have no standing to ask this Court to impose injunctive relief.

  **C.**   **PLAINTIFFS MUST ESTABLISH STANDING TO SEEK INJUNCTIVE RELIEF UNDER WELL-SETTLED UNITED STATES SUPREME COURT PRECEDENT, NINTH CIRCUIT PRECEDENT, AND THE DECISIONS OF THIS COURT.**

Plaintiffs must demonstrate standing. "In limiting the judicial power to Cases and Controversies, Article III of the Constitution restricts it to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury" to the person seeking redress. <u>Summers v. Earth Island Institute</u>, 555 U.S. 488, 492 (2009)(quotation marks omitted). The United States Supreme Court has described this as a "fundamental limitation" to judicial power. <u>Id</u>.

Plaintiff must show that he has "alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." <u>Summers</u>, 555 U.S. at 493 (emphasis original), quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498-99 (1975). More specifically:

> To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers, 555 U.S. at 493.

In the context of injunctive relief, a plaintiff cannot substitute an allegation of past conduct for factual allegations concerning a "threat" of future injury. Allegations of past conduct will not support claims for ongoing relief. See, e.g., Summers, 555 U.S. at 495 (finding that association could not base its Article III standing for an injunction upon past regulatory decisions by defendant agency, "because [that evidence] relates to past injury rather than imminent future injury that is sought to be enjoined"); City of Los Angeles v. Lyons, 461 U.S. 95 (1983)(finding plaintiff had no standing to seek injunction against police officers using chokeholds, even though he had been personally injured by this practice in the past). To have standing to seek an injunction related to past conduct, a plaintiff must demonstrate that he is "realistically threatened by a repetition of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006) (emphasis in original)(holding that plaintiffs did not have standing to seek an injunction despite costs plaintiffs incurred in completed electoral controversy; the prospect of a renewed electoral controversy was hypothetical and speculative).

In assessing the likelihood of repetition, courts expect that a plaintiff will not continue to voluntarily subject himself to an alleged wrong. As a matter of law:

> If a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices.

In re Intel Laptop Battery Litigation, 2011 WL 7290487 at *2.

As noted above, the threat of future injury facing a plaintiff must be concrete and particularized. A plaintiff cannot be heard in court with respect to a "generalized grievance" that the plaintiff shares with the public at large. See, e.g., Baldwin v. Sebelius, 654 F.3d 877 (9th Cir. 2011)(holding that the plaintiffs had no standing to

challenge the "individual mandate" of the Patient Protection and Affordable Care Act), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)(finding that plaintiff organizations has no standing to challenge federal funding rules). A risk that a plaintiff shares with the public in general is not an injury-in-fact and does not give rise to Article III standing. This limitation on standing holds whether the plaintiff is one of millions of people subject to illegal law enforcement practices (Lyons), a change in tax law (Baldwin), or the risks associated with use of an online service (Match.com).

Numerous courts in the Ninth Circuit – faced with putative class actions arising from alleged privacy violations – have held that the disclosure of information, in the absence of any harm, is insufficient grounds for Article III jurisdiction. See, e.g., Whitaker v. Health Net of California, Inc., 2012 WL 174961 (E.D. Cal. 2012)(dismissing a claim related to disclosure of medical information to third parties, as "plaintiffs do not explain how the loss here has actually harmed them or threatens to harm them"); Low v. LinkedIn Corp., 2011 WL 5509848 at *6 (N.D. Cal. 2011)(same, "Low has not alleged that his credit card number, address, and social security number have been stolen or published or that he is a likely target of identity theft as a result of LinkedIn's practices"); LaCourt v. Specific Media, Inc., 2011 WL 1661532 at *3-6 (C.D. Cal. 2011)("It would be very difficult to conclude at this point that Plaintiffs have met their burden of establishing that this Court has subject matter jurisdiction"); Reilly v. Ceridian Corp., 664 F.3d 38, 43 (3d Cir. 2011)(affirming the dismissal of case for lack of subject-matter jurisdiction in the absence of any misuse of information), cert. denied, 132 S.Ct. 2395 (2012).

To the extent that the Ninth Circuit has found the theft of personal information sufficient to support Article III standing, such a finding rested on the grounds that the information stolen, obtained through the theft of a laptop containing unencrypted personal data, was *highly sensitive*, and included names, addresses and social security numbers. Krottner v. Starbucks Corp., 628 F.3d 1139, 1143 (9th Cir. 2010). Furthermore, the Court's finding relied on the allegation that "someone had attempted

to open a new [bank] account using [a plaintiff's] social security number[.]" Id., at 1141.  The Court specifically noted that "[w]ere Plaintiffs-Appellants' allegations more conjectural or hypothetical, for example, if no laptop had been stolen and Plaintiffs had sued based on the risk that it would be stolen at some point in the future, we would find the threat far less credible." Id.

In addition, this Court's decision in Match.com is directly on-point here.  In that case, plaintiff sued an online dating service:

> Plaintiff alleges that while she was a subscriber, she utilized the service to meet another subscriber who was a serial sexual predator.  Plaintiff alleges that this subscriber forcibly raped her.  Plaintiff further alleges that Defendant could have instituted basic screening procedures to prevent her rape.

Match.com, 789 F. Supp. 2d at 1198.  Plaintiff brought her suit in state court. Defendant removed.  This Court sua sponte raised the issue of standing, and, finding none, remanded the case to state court.  As this Court noted, "Plaintiff has not shown that she has a greater likelihood of injury than any of Defendant's other one million subscribers and millions of members nationwide." Id. at 1201.  Also, "the mere fact that Plaintiff has suffered past harm does not itself show a sufficient probability of future harm." Id.  "Courts have found that a litigant does not have standing to seek injunctive relief on behalf of an unnamed class when the litigant's claim depends on such a chain of speculative contingencies." Id.

### D. PLAINTIFFS' DEMANDS FOR INJUNCTIVE RELIEF DO NOT PRESENT AN ACTUAL OR IMMINENT THREAT THAT PLAINTIFFS WILL SUFFER CONCRETE AND PARTICULARIZED HARMS, AND SO MUST BE DISMISSED.

Even if all of Plaintiffs' well-pleaded factual allegations were true (they are not), Plaintiffs would not be entitled to seek any of the injunctive relief demanded.

Plaintiff cannot be entitled to an order of this Court:

> (a) enjoining Defendants from tacking on additional, undisclosed costs to ensure security in the form of a post-point-of-sale Authenticator; [or]
> (b) enjoining Defendants from requiring customers to acquire a Battle.net

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

>account (and thereby risking the security of their Private Information) for game titles that are not MMORPGs, such as the StarCraft or Diablo franchises . . .

Prayer for Relief, Section E.

As to the named Plaintiffs, the injunctive relief described in both subsections (a) and (b) relate to events that are wholly in the past. Spellman claims he bought Authenticators in connection with his Battle.net account, while Bell says he did not. Compl. ¶¶ 9-10. These past decisions cannot form the basis for injunctive relief. See, e.g., Summers and Lyons, supra. What matters is whether Bell and Spellman are "realistically threatened by a repetition of the violation." Gest, 443 at F.3d 1177. Neither even alleges that he anticipates purchasing any more games from Blizzard, nor that Blizzard is developing any new Authenticators for sale. Neither suggests there is any reason they would create another Battle.net account. Indeed, given that Bell and Spellman have filed a federal Complaint regarding these matters, to make any new purchases would be to troll for new "injury." Article III standing to seek injunctive relief cannot be premised on a plaintiff continuing to seek out the allegedly wrongful conduct. See, e.g., In re Intel Laptop Battery Litigation, supra.

Plaintiffs also have no standing to seek an order "(c) enjoining Defendants from actions which place consumers at a risk of future security breaches," as such a speculative bar would run directly afoul of Ninth Circuit case law, which prohibits injunctive relief based on speculative future harm. Match.com, 789 F. Supp. 2d at 1201. Bell and Spellman cannot sue to enjoin hypothetical future criminal attacks against Blizzard. Id.; see also Krottner, 628 F.3d at 1143. Plaintiffs' compound speculation that such an attack *may* happen in the future, and *may* be successful, and *may* result in the attacker acquiring information about Plaintiffs' accounts, which the attacker *may* then misuse to Plaintiffs' detriment, fails every test laid down by the Courts to establish Article III standing. See, e.g., Summers, Lyons, Match.com.

Plaintiffs, like all other consumers in America, stand at some ambient risk of identity theft. A generalized grievance does not provide the basis for a lawsuit. See,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

e.g., Lujan and Baldwin, supra.  Even if the alleged misappropriation of information occurred as pleaded, it did not include even Plaintiffs' names, much less sensitive personal information which would leave them uniquely subject to attack.  See, e.g., Whitacker, Low, LaCourt, and Match.com.

### E. THIS COURT CAN DISMISS PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF INDEPENDENT OF ANY RULING BY THE ARBITRATOR.

While this Court could not possibly grant injunctive relief prior to arbitration, this Court can and should deny it now.  "The decision whether to stay the non-arbitrable issues…pending arbitration rests with the sound discretion of the district court." United Communications Hub, Inc. v. Qwest Communications, Inc., 46 Fed.Appx. 412, 415 n. (9th Cir. 2002), citing to Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20-21 and n. 23 (1983) (noting a preference for proceeding with nonarbitrable claims when feasible).  The Ninth Circuit has recognized "a preference for proceeding with the non-arbitrable claims when feasible". United Communications Hub, 46 Fed.Appx. at 415.  Plaintiffs have failed to make factual allegations which, if true, would give them standing to seek injunctive relief.  That failure cannot be cured or obviated by anything that could happen or be decided in arbitration.  Therefore, this Motion to Dismiss can be decided now.  Indeed, "[a] court has an obligation to consider its jurisdiction at every stage of the proceedings." Gros Ventre Tribe v. U.S., 469 F.3d 801, 815 (9th Cir. 2006), cert. denied, 552 U.S. 824 (2007).

### V. CONCLUSION

For failure to allege a concrete and particularized harm which they actually or imminently face, Plaintiffs' demands for injunctive relief must be dismissed.  Plaintiffs cannot be allowed to invoke this Court's jurisdiction to issue injunctions on the promise that Plaintiffs will eventually find a basis for so doing.  Plaintiffs have no basis now, and their claims for injunctive relief should be dismissed now.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

This action should be sent to individual (non-class) arbitration without the specter of injunctive demands lingering over these proceedings.

DATED: January 18, 2013    REED SMITH LLP

By: /s/ Kathyleen A. O'Brien
Kathyleen A. O'Brien (SBN 94218)
Dominique H. Pietz (SBN 260716)
Mark S. Melodia (pro hac vice)
Paul Bond (pro hac vice)
Attorneys for Defendants
BLIZZARD ENTERTAINMENT, INC. and
ACTIVISION BLIZZARD, INC.