**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (CA #167688)
hbates@cbplaw.com
Randall K. Pulliam (Pro Hac Vice)
rpulliam@cbplaw.com
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Telephone:   (501) 312-8500
Fax:             (501) 312-8505

**MILSTEIN ADELMAN, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@milsteinadelman.com
Sara D. Avila, State Bar No. 263213
savila@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone:   (310) 396-9600
Fax:             (310) 396-9635

Attorneys for Plaintiffs Benjamin Bell and Christopher Spellman, on behalf of themselves and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN BELL, et al., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BLIZZARD ENTERTAINMENT, INC., a Delaware Corp.,.<br><br>    Defendant. | **Case No: 2:12-cv-09475-BRO (PJWx)**<br><br>**CLASS ACTION**<br><br>**RULE 26 JOINT SCHEDULING REPORT** |

Pursuant to Federal Rule of Civil Procedure Rule 26(f), C.D. Cal. LR 26 and the Court's July 1, 2013 Order for Rule 26 Joint Scheduling Conference (Dkt. 51), Plaintiffs Benjamin Bell and Christopher Spellman ("Plaintiffs") and Defendant Blizzard Entertainment, Inc. ("Defendant") hereby submit this Rule 26 Joint Scheduling Report.

### A.  STATEMENT OF THE CASE

**Plaintiff's Position:**

This proposed Class Action concerns Blizzard's omissions, misrepresentations and overall deception at the point of sale (after the introduction of the Key Ring Authenticator). Specifically, despite its indisputable knowledge of the significant security risks and the fundamental necessity of a Key Ring Authenticator, Blizzard chose not to inform consumers at, or prior to, the point of sale that the post-sale purchase of a Key Ring Authenticator is necessary to ensure any modicum of security for Battle.net accounts. This amounts to an undisclosed, after-the-fact charge that consumers are required to pay simply to prevent their Battle.net accounts from being hacked while they play video games. If Battle.net account holders do *not* purchase these items, their Private Information faces a drastically increased risk of being stolen, a fact that is not disclosed to customers prior to purchase. *Id.* As damages, Plaintiffs seek (a) the cost of obtaining a Key Ring Authenticator, and (b) for those proposed Class members where relevant, the cost of past expenditures on insufficient mobile authenticators.

**Defendant's Position:**

Defendant Blizzard Entertainment, Inc.[1] is the developer and publisher of the popular fantasy role-playing game franchises World of Warcraft, Diablo, and StarCraft. Blizzard offers a multi-featured online game service called Battle.net. Battle.net includes a centralized account system that allows players to manage their

---

[1] On April 29, 2013, Plaintiffs dismissed Activision Blizzard as a defendant, without prejudice. Therefore, no claims against Activision are currently pending.

1 Blizzard game licenses in one place. It requires players to activate a password-
2 protected Battle.net account in order to play certain Blizzard games and to use related
3 services. The Battle.net Authenticator is an optional ancillary security device that is
4 offered by Blizzard to help protect players from the unauthorized use of their player-
5 controlled passwords by third parties. The Authenticator requires players to enter the
6 random code generated by that device, in addition to their passwords, in order to
7 access their Battle.net accounts. Blizzard offers two versions of the Authenticator: (1)
8 a Mobile Authenticator, which runs on most mobile telephones; and (2) a physical
9 Key Ring Authenticator. Far from using the Authenticator as a profit center, Blizzard
10 makes the Mobile Authenticator available free of charge and offers the Key Ring
11 Authenticator for a price of $6.50 delivered, with the vast majority of the purchase
12 price covering Blizzard's costs associated with the device.

13 Following Blizzard's motions challenging Plaintiffs Amended Complaint, of
14 the eight counts originally alleged, the only counts remaining in this proposed class
15 action are Counts I and II for violations of the Delaware Consumer Fraud Act
16 ("CFA"), and the only theory of recovery under the CFA not rejected by the Court is
17 Plaintiffs' contention that "Blizzard should have disclosed that to have security in
18 their account safety, Battle.net account holders had to purchase an Authenticator."
19 (Dkt. 54 at 7).

20 Discovery will demonstrate that Plaintiffs' remaining allegation has neither
21 legal nor factual merit.

22     **B.**    **SUBJECT MATTER JURISDICTION**
23    **Plaintiffs' Position:**
24 The Court has subject matter jurisdiction over this nationwide class action
25 pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005,
26 because the matter in controversy exceeds $5,000,000.00, exclusive of interest and

27
28

costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

**Defendant's Position:**

This Court's ruling on Blizzard's Motion for Judgment on the Pleadings eliminated all of Plaintiffs' causes of action except the CFA counts, and rejected all theories of CFA recovery except for Blizzard's alleged failure to disclose the "necessity" of the Authenticator prior to sale. (Dkt. 54 at 7). The Court rejected all claims for recovery based on anxiety, emotional distress, increased risk, and diminution of value. In light of this ruling, Blizzard is unconvinced that Plaintiffs have met their burden of presenting a controversy in which the amount at issue exceeds $5,000,000.

**C.     LEGAL ISSUES**

**Plaintiffs' Position:**

In an April 3, 2013 Order, Judge Stephen V. Wilson (a) denied Defendant's the motion to compel arbitration finding all of Plaintiffs' claims are exempted from the arbitration agreement. [Dkt. 35 at 5], and (b) denied in part, and granted in part, Blizzard's second motion, finding that Plaintiffs have standing for purposes of their request for injunctive relief under the Delaware's Consumer Fraud Act, 6 Del. C. § 2511 *et seq* ("CFA"). *Id.* at 8. On July 11, 2013, this Court denied Defendants' Motion for Judgment on the Pleadings with respect to Plaintiffs' Counts I and II, and dismissed Counts III, IV, V, VI, VII and VIII. Plaintiffs were granted leave to amend Counts III, IV, V, VI and VII. Plaintiffs do not intend to file an additional complaint at this time.

Plaintiff's complaint alleges violations of the Delaware Consumer Fraud Act, 6 Del. C. § 2511 *et seq.* ("CFA"). The crux of Plaintiffs' claims are whether Blizzard made a false representation or concealed an important fact in the sale of merchandise,

and whether Blizzard intended for other persons to rely on these misrepresentations or omissions. The key legal issues in this matter include the following:

(1) Whether Defendant violated the CFA by employing deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of its merchandise;

(2) Whether Defendant violated, and continues to violate, the CFA by failing to inform consumers at the initial point of sale of Defendants' video games that a Battle.net Authenticator is necessary to ensure security for Battle.net accounts;

(3) Whether Defendant's conduct constitutes an unfair and/or deceptive trade practice;

(4) Whether Plaintiff and members of the Class have sustained damages, and if so, what is the proper measure of those damages;

(5) Whether injunctive relief is appropriate in this matter.

Given the purpose of this report is to provide the Court with the parties' positions on scheduling and discovery, Plaintiffs feel that Defendant's extensive use of argument in this report is an attempt to reframe this Court's prior rulings and inappropriate. Accordingly, Plaintiffs will comply with this Court's Order Setting Scheduling Conference (Dkt. 51), F.R.C.P. 26 and local rules and not engage in the same conduct.

**Defendant's Position:**

This Court has significantly narrowed the issues in this action. Blizzard understands the Court's Orders to have left only Plaintiffs' CFA claim, and that claim only to the extent based on Blizzard's alleged failure to earlier disclose the

Authenticator for sale. Blizzard also understands the putative class period to cover only three years prior to this suit, which excludes Plaintiff Spellman's claims. Plaintiffs have declined to file a Second Amended Complaint at this time. To ensure that there is no disagreement as to what issues Plaintiffs can and cannot pursue, Blizzard provides the analysis below of what the Court's decisions mean for this action moving forward.

On April 3, 2013, the Court granted in part, and denied in part, Blizzard's Motion to Dismiss Injunctive Claims. (Dkt. 35). The Court dismissed with prejudice Plaintiffs' two demands for injunctive relief related to the sufficiency of Blizzard's point-of-sale disclosures with respect to Authenticators and Battle.net accounts.

On April 29, 2013, Blizzard filed its Answer and denied Plaintiff's allegations. (Dkt. 39). Among other affirmative defenses, Blizzard asserted that Plaintiffs face contractual limitations on recovery; that Plaintiffs assumed the risks associated with online gaming; that any injury Plaintiffs suffered as a result of a criminal attack on Blizzard is the fault of those criminals; and that the statute of limitations bars recovery.

On June 29, 2013, Plaintiffs filed a Motion for Class Certification (Dkt. 48). Following the Court's determination on the Motion for Judgment on the Pleadings, see below, Plaintiffs have stated that they will withdraw the Motion for Class Certification as filed.

On April 29, 2013, Blizzard filed a Motion for Judgment on the Pleadings. (Dkt. 42). On July 11, 2013, the Court issued an Order on that Motion. (Dkt. 54). The Court denied the Motion as to Plaintiffs' Counts I and II under the CFA. The Court addressed all three theories on which Plaintiffs' CFA claims were based and only allowed them to move forward on the last theory.

(1) <u>Misrepresentation of Security Quality</u>:  The Court found that "under the alleged facts, Defendant did not fraudulently misrepresent the security of Plaintiffs' personal information."  (Dkt. 42 at 6).

(2) <u>Failure to Inform Consumers That They Must Provide Their Private Information To Play Defendant's Game</u>:  The Court found that "Defendant's failure to disclose that such information [e-mail address, password, and answer to a security question] must be provided before playing cannot plausibly be an omission of a material fact in violation of the CFA." (Dkt. 42 at 6).

(3) <u>Failure To Inform Consumers That An Authenticator Is Required For Account Safety</u>:  The Court found that this component of Plaintiffs' CFA claims met the applicable pleading standards.  The Court denied Blizzard's Motion as to Counts I and II solely "because Defendant failed to provide any explanation for how its omissions regarding the necessity of an authenticator for account safety does not violate the CFA." (Dkt. 42 at 7).

The Court granted Blizzard's Motion as to Plaintiffs' Counts III and IV for unjust enrichment.  "Plaintiffs base their unjust enrichment claim on the contractual terms of the TOU and the Privacy Policy," so those contracts provide an exclusive remedy in law. (Dkt. 42 at 8).

The Court granted Blizzard's Motion as to Plaintiffs' Count V for negligence *per se*.  The Court found that under "the plain text" of Delaware's data security breach notification statute, the information which Plaintiffs allege was stolen did not trigger any duty.  (Dkt. 42 at 9-11).

The Court granted Blizzard's Motion as to Plaintiffs' Counts VI and VII for negligence and breach of contract, because "Plaintiffs cannot show that they have suffered any harm." (Dkt. 42 at 14).

The Court noted that "Defendant contends that damages for anxiety and emotional distress are not applicable to this case," and due to Plaintiffs' failure to oppose "the Court deems this point conceded." (Dkt. 42 at 11, n.8). The Court found that "increased risk of future harm, in the context of identity theft" did not constitute an actionable harm under negligence or breach of contract theories. (Dkt. 42 at 12-13). The Court found that Plaintiffs were barred by the economic loss doctrine from pursuing tort claims, such as negligence, for the diminution of video game value. (Dkt. 42 at 13-14). Lastly, the Court found that "Because the governing contract does not allow Battle.net users to sell or transfer their accounts, the resale value of Plaintiffs' games both before and after the August breach was effectively zero." (Dkt. 42 at 14).

The Court dismissed with prejudice Plaintiffs' Count VIII, for violation of the duty of bailment. The Court found, *inter alia*, that "No court has held that personal information is a chattel that can be bailed." (Dkt. 42 at 15).

Plaintiffs have no present intention to further amend the Amended Complaint. Therefore, the remaining issues presented, as to each named Plaintiff[2] are:

(1) When and how did that Plaintiff buy a Blizzard game requiring a Battle.net account to play?

(2) Was this suit filed within the three-year statute of limitations provided for Consumer Fraud Act claims?

(3) What were the disclosures made or available to that Plaintiff regarding account security prior to sale?

(4) What understanding of the risk of account compromise inherent to online gaming should be imputed to the reasonable online video game consumer?

---

[2] While the Court's Order dismissed all claims that Plaintiff Spellman could possibly make, until he is removed from this case he should not be excused from discovery.

(5) What understanding of the risk of account compromise inherent to providing personal information online should be imputed to the reasonable online video game consumer?

(6) What is the online video game industry practice for making players aware of auxiliary security devices?

(7) Based on those disclosures and what a reasonable online video game player would know and expect, would that player believe that Blizzard was offering a game free of the risk of account compromise?

(8) What forms of protection from account compromise did Blizzard offer free of charge as part of providing these games?

(9) What steps does Blizzard take to restore property to accounts that have been compromised upon request?

(10) In light of the above, did that Plaintiff suffer any damage?

Plaintiff Spellman has already pled himself out of this case. He alleges in the Complaint, para. 10, that he has had a Battle.net account since "at least November, 2004." Therefore, his CFA claims were time-barred in 2007. Further, the Complaint alleges that Authenticators were introduced in 2008. Complaint, para. 26. Blizzard cannot have had a duty to disclose in November of 2004 the availability of a product it would not introduce until years later.

The case before the Court has been reduced to just the questions above. Blizzard proposes to proceed with a discovery schedule that is narrowed to the issues raised by each Plaintiff individually under the remaining theory of Plaintiffs' CFA claim. Blizzard proposes that each Plaintiff be required to prove his individual claim prior to asking the parties and the Court to move forward with discovery for certification of a nationwide class.

Additional information, relating to the putative classes, which would only be relevant if any Plaintiff first proved that his own claim had any merit:

(1) The method by which membership in the proposed classes can be ascertained, if any

(2) The numerosity of each alleged class

(3) What issues of law or fact the alleged class members all have in common, if any, given that putative class members bought different games at different prices at different times, pursuant to different retail channels each with different disclosures, intending to play those games on different computer systems

(4) Whether the named Plaintiffs' claims are typical of the claims they would seek to assert on behalf of the alleged class

(5) Whether Plaintiffs would be adequate class representatives, including but not limited to an examination of their respective membership in the alleged class or classes, and of any defenses unique to them individually

(6) The adequacy of proposed class counsel

(7) An examination of the method by which Plaintiffs propose to have this Court adjudicate liability on a classwide basis, including but not limited to the cost and time that would associated with the execution of such method

(8) An examination of the method by which Plaintiffs propose to have this Court adjudicate damages on a classwide basis, including but not limited to the cost and time that would associated with the execution of such method

(9) Analysis with respect to whether common issues would predominate in such adjudications, given the wide variety of individual circumstances,

(10) Analysis as to whether such adjudications would form a superior means of resolving the claims of the putative class, especially given Blizzard's

RULE 26 JOINT SCHEDULING REPORT

          policy to restore virtual property to allegedly compromised accounts upon request

(11) Analysis of the means by which Plaintiffs propose to provide notice to the members of the class

Defendant reserves the right to modify or supplement the above in light of further case developments.

### D. PARTIES, EVIDENCE, ETC.

**Plaintiffs' Position:**

The parties to this matter are Plaintiffs Benjamin Bell and Christopher Spellman and Defendant Blizzard Entertainment, Inc. At this time, Plaintiffs identify Benjamin Bell and Christopher Spellman as potential witnesses. Plaintiffs reserve the right to add potential witnesses after discovery is completed. Plaintiffs intend to designate expert witnesses. Discovery has not yet commenced in this action. At this time, Plaintiffs identify the following key documents but reserve their right to add documents as discovery progresses:

(1) Battle.net Terms of Use; and

(2) Blizzard Entertainment Industries Privacy Policy.

**Defendant's Position:**

As listed above, for the merits of their own claims, Plaintiffs must produce documentary evidence and/or testimony as to their own respective purchases, relevant history and practices, alleged damages, etc. Without waiver of any objection to any specific discovery, Blizzard would provide documentary evidence and/or testimony in connection with:

(1) Blizzard's records of Plaintiffs' purchases

(2) Blizzard's disclosures connected with the sale of the products purchased by the Plaintiffs, specific to the time and channel of purchase identified by Plaintiffs

(3) Information that Blizzard made available to the public in connection with Authenticators and account security

(4) Information that Plaintiffs viewed or acquired during purchase, or by means of prior purchases, or otherwise regarding (a) the risk of account compromise and (b) the sale of auxiliary security devices

(5) Blizzard's disclosures connected with establishing and using a Battle.net account

(6) Blizzard's offer of methods to protect against account compromise, free of charge, including the number of mobile Authenticators provided for free

(7) Blizzard's practice of restoring property to accounts upon claim of compromise

Defendant reserves the right to modify or supplement the above in light of further case developments.

### E. DAMAGES

**Plaintiff's Position:**

Plaintiffs seek damages in the amount of (a) the cost of obtaining a Key Ring Authenticator which Defendant did not disclose the necessity of at the time of the purchase of Defendants' video games, and (b) for those Class members where relevant, the cost of past expenditures on insufficient mobile authenticators. Although sales figures are unknown at this time, Plaintiffs estimate damages to be tens of millions of dollars based on publicly available information. Defendant has a record of every sale of at least every customer who creates an account on Battle.net (as well as sales information for the games and authenticators) and knows the identity and contact information for every class member. As such, calculating and proving damages will be relatively simple once discovery is completed.

**Defendant's Position:**

Plaintiffs are not entitled to any damages. Plaintiffs cannot certify any litigation class. The persons described by the classes proposed in the Complaint and Plaintiffs' Motion for Class Certification are not entitled to any damages. To prove any individual's entitlement to compensation under the remaining CFA theory would require an examination of all of the concrete facts of the transaction, to determine what a reasonable online video game purchaser would have expected. Plaintiffs have not proposed any method to do so on a classwide basis.

### F. INSURANCE

Blizzard has tendered a claim to Chartis Specialty Insurance Company in connection with this matter, and has received a reservation of rights letter.

### G. MOTIONS

The parties do not currently expect to file any Motions apart from those discussed in Section M below.

### H. MANUAL FOR COMPLEX LITIGATION

The parties believe that, even in the event the case is certified as a class action, it will not be necessary to utilize the procedures of the Manual for Complex Litigation, other than possibly the sections related to class notice and settlement. *See Manual for Complex Litigation,* Fourth, §§ 21.3 (Postcertification Communications with Class Members), 21.6 (Settlements), 21.7 (Attorney Fee Awards).

### I. STATUS OF DISCOVERY

No discovery has been conducted.

### J. DISCOVERY PLAN

**Plaintiffs' Position:**

    **1. Initial Disclosures**

The parties propose that initial disclosures be exchanged on August 8, 2013.

## 2. Discovery Subjects

**Plaintiffs' Discovery:**

The discovery Plaintiffs will seek from Defendant includes documents, information, and testimony regarding Defendant's policies, practices and procedures with respect to the marketing and sale of its video games and authenticators. In part, Plaintiffs will seek:

a) Documents and information relating to Defendant's initial decision to develop and market the Authenticator and any subsequent revisions to the development and marketing of the Authenticator;

b) Documents and information related to any security events or risks that influenced the initial development, continued sale or any revisions to the marketing or design of Authenticators;

c) Documents and information relating to statements by Defendant to customers and/or the general public regarding the value, purpose and/or need of the Authenticators;

d) Documents and information concerning Defendant's requirement that its games only be played on-line;

e) Documents and information relating to the use, value or proposed or recommended acquisition of an Authenticator in the context of the auction houses;

f) Documents and information related to Defendant's decision to not include an Authenticator with the purchase of a video game;

g) Documents and information related to Defendant's determination of the price point for video games, the Authenticator as a separate item, and any consideration or proposal of the video game with an Authenticator included;

h) All versions of terms of use since the Authenticator was developed;

i) All versions of product packaging for games and Authenticators since the Authenticator was developed;

j) Documents and information related to (1) Authenticator sales numbers, revenues and profits, (2) video games sales numbers, revenues and profits (3) Battle.net accounts established, (4) Battle.net balance participants and sales, (5) auction house participants and sales.

k) Defendant's experts.

Plaintiffs do not believe bifurcating merits and class discovery is necessary or appropriate in this matter. Plaintiff proposes the following discovery deadlines:

Deadline to conclude Class Certification discovery - January 15, 2014

Deadline for disclosure of Class Certification Expert – January 15, 2014

Deadline for filing of Class Certification rebuttal – March 15, 2014

Deadline for renewed Class Certification motion – April 15, 2014

Deadline to amend pleadings and/or add parties – July 1, 2014

Merits Discovery deadline - September 1, 2014.

### 3. Discovery Limitations

The parties do not have any proposed changes to the applicable discovery limitations.

Plaintiffs' Position:

It is Plaintiffs' position that there is no basis for Blizzard's proposed "three-tiered" discovery scheduled that focuses exclusively on Plaintiff Bell's individual claims and postpones class discovery until after consideration and resolution of Blizzard's anticipated motion for summary judgment on the named Plaintiffs' claims. Blizzard's proposal seeks to alter the sequence of discovery – an alteration that is generally "'disfavored because discovery stays may interefere with judicial efficiency and cause unnecessary litigation in the future.'" *Otey v. Crowdflower, Inc.*, Case No. 12-cv-05524-JST, 2013 U.S. Dist. LEXIS 65813, *3-4 (N.D. Cal. May 8, 2013)

1 (citation omitted).  Indeed, to deny Plaintiffs the opportunity to pursue Class discovery contravenes the purposes of class actions and Rule 23, which is to promote efficient resolution in one proceeding of common issues of law and fact arising from the same conduct. *See Barnhart v. Safeway Stores, Inc.*, Case No. CIV S-92-0803 WBS JFM, 1992 U.S. Dist. LEXIS 22572, *3-6, *9 (E.D. Cal. Dec. 14, 1992); cf. *Otey*, 2013 U.S. Dist. LEXIS 65813, at *7 (denying defendants' request to resolve the named-plaintiff's "individual claims in the first instance [because to do so] would turn this putative collective action into an action by an individual").  Moreover, while a defendant may choose to focus on the dismissing individual claims of the named plaintiffs in a class action, it is often not an efficient manner to proceed nor the best use of judicial resources. In sum, simply because Blizzard chooses an inefficient defense strategy, Plaintiffs, the class and the Court should not be required to put Class discovery on hold. Instead, consistent with the precedent, this Court should allow discovery to proceed on the class issues as well as the individual plaintiffs to commence immediately and proceed simultaneously.

**Defendant's Position:**

Defendant agrees to Plaintiffs' proposed deadlines for initial discovery, for Plaintiffs to file a renewed motion for class certification, and for all dates between the final scheduling conference and the jury trial. Importantly, Defendant does not seek to extend any of these proposed deadlines by a single day.

However, Defendant does not agree that full-scale class discovery should be launched before Plaintiffs have even shown that either of them has a single viable claim against Blizzard.  While Plaintiffs are confident that they will find some theory to pursue on behalf of some putative class, they were equally confident in causes of actions and theories of recovery since dismissed, some with prejudice.  Plaintiffs were also confident about their Motion for Class Certification, which they now withdraw and seek to refile sometime in 2014.

This Court has done careful work in paring down the issues presented by the Amended Complaint to just the CFA, and to just one theory under the CFA, and to just a claim for damages and not injunctive relief. The value of that work will be compromised if Plaintiffs, prior to proving any claim or articulating any class, were permitted to conduct discovery on behalf of an unpled class of millions of players. Therefore, Blizzard proposes the schedule attached hereto as Exhibit 1, in which merits discovery and adjudication will precede class discovery. Blizzard's proposed schedule will promote efficiency and conserve judicial resources by allowing Plaintiffs to immediately engage in full merits discovery but by deferring discovery as to the unnamed class members until after the parties have had the opportunity to further narrow the claims at issue through motions for summary judgment. Plaintiffs are simply proposing the reverse -- they seek to conclude class certification discovery in January of 2014 followed by the conclusion of merits discovery in September of 2014, seven and one half months later without demonstrating how this promotes efficiency based on the claims at issue.

As this merits discovery will demonstrate, Plaintiffs have no case. While Blizzard recommends an Authenticator as an additional layer of security to reduce the chance of a third party gaining access to a player's account (1) it is not "necessary" for players "to purchase a Key Ring Authenticator to ensure any modicum of security for Battle.net accounts;" (2) their private information does not "face a drastically increased risk of being stolen" if they do not purchase this device; and (3) any such purchase does not "amount to an undisclosed, after-the-fact charge that consumers are required to pay simply to prevent their Battle.net accounts from being hacked". Blizzard has made a team of customer service representatives available 365 days per year to assist with issues relating to accounts, including restoring virtual property that is stolen as the result of password theft resulting in account compromise. This is one of the largest customer service teams in the PC gaming industry. Only a minority of

1 Blizzard players have any Authenticator associated with their Battle.net accounts.
2 Also, the overwhelming majority of Blizzard players, like Plaintiffs Bell and
3 Spellman, have not had their accounts hacked or any virtual property taken.

4 Through its website, where people research products prior to the point of sale,
5 Blizzard provides players with accurate and appropriate information about account
6 security. The protection of their password information is a matter within the player's
7 control. Therefore, Blizzard provides to players, in conjunction with setting up their
8 Battle.net accounts, links to webpages which detail the common types of account theft
9 that can occur and which outline the important steps that players can take to protect
10 the security of their information and home computers.

11 **K.   DISCOVERY CUT-OFF**
12 **Plaintiffs' Position:**
13 **September 1, 2014.**
14 **Defendant's Position:**
15 Please see the schedule attached as Exhibit 1.

16 **L.   EXPERT DISCOVERY**
17 **Plaintiffs' Position:**
18 **June 15, 2014.**
19 **Defendant's Position:**
20 Please see the schedule attached as Exhibit 1.
21

22 **M.   DISPOSITIVE MOTIONS**
23 **Plaintiffs' Position:**
24 The only pending motion is Plaintiffs' Motion for Class Certification filed June
25 28, 2013 (Dkt. 48). In lieu of the Court's July 11, 2013 ruling, Plaintiffs will seek to
26 amend and refile the Motion for Class Certification after having had the opportunity to
27 conduct class-related discovery, consistent with the schedule proposed below.
28

Plaintiff may seek leave to amend their complaint to add parties and/or additional claims as discovery progresses. Plaintiff may also file a motion for summary judgment.

**Defendant's Position:**

If this matter proceeds, Blizzard intends to file a Motion for Summary Judgment on all issues. Blizzard also reserves the right to file a Motion to Deny Class Certification and Strike Class Claims at the earliest possible opportunity.

### N. SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION

There have been no settlement discussions or written communications regarding a resolution to this matter to date. The parties' choice of alternative dispute resolution pursuant to Local Rule 16-15.4 is private mediation.

### O. TRIAL ESTIMATE

Given the nature of the claims and the expert-driven issues in this matter, the parties anticipate a 4-day trial. Plaintiff anticipates calling 10 or fewer witnesses. Defendant anticipates calling 10 or fewer witnesses.

### P. TRIAL COUNSEL

Hank Bates and Randall K. Pulliam of Carney Bates & Pulliam, PLLC, and Gillian L. Wade of Milstein Adelman, LLP will be lead trial counsel for Plaintiff and the Class.

Mark S. Melodia and Kathyleen A. O'Brien of Reed Smith LLP will be lead trial counsel for Defendant Blizzard.

### Q. INDEPENDENT EXPERT OR MASTER

The parties agree that no independent expert or master is necessary in this matter.

### R.     TIMETABLE AND PROPOSED TRIAL DATE

Complete the Schedule of Pretrial and Trial Dates form attached as Exhibit A to this Order and attach it to the Joint Rule 26(f) Report.  Plaintiffs and defendant agree on a trial date of November 10, 2014.

### S.     OTHER ISSUES

As noted above, Blizzard has suggested that proof be ordered to address merits issues first.  Plaintiffs object to that proposal.

Blizzard anticipates that there will be a need for an Order to protect the confidentiality of materials produced in discovery.

Dated:  July 22, 2013

PLAINTIFFS

/s/

**MILSTEIN ADELMAN, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@milsteinadelman.com
Sara D. Avila, State Bar No. 263213
savila@milsteinadelman.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone:   (310) 396-9600
Fax:               (310) 396-9635

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (CA #167688)
hbates@cbplaw.com
Randall K. Pulliam (Pro Hac Vice)
rpulliam@cbplaw.com
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Telephone:   (501) 312-8500
Fax:               (501) 312-8505

DEFENDANT

/s/

**REED SMITH LLP**
Kathyleen A. O'Brien (SBN 94218)
Email:  Kobrien@Reedsmith.Com
Dominique H. Pietz (SBN 260716)
Email:  Dpietz@Reedsmith.Com
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Telephone: +1 310 734 5200
Facsimile:  +1 310 734 5299

**REED SMITH LLP**
Mark S. Melodia (Pro Hac Vice)
Email:  Mmelodia@Reedsmith.Com
Paul Bond (Pro Hac Vice)
Email:  Pbond@Reedsmith.Com
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ 08540